## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

ECOPETROL AMERICA, LLC,    )
    )
    *Plaintiff*,    )
    )
v.    )    Civil Action No. 6:24-cv-939
    )
    )
THE UNITED STATES DEPARTMENT    )
OF THE INTERIOR,    )
    )
*Defendant.*

## COMPLAINT

Ecopetrol America, LLC f/k/a Ecopetrol America, Inc. ("**Ecopetrol**") files this Complaint against the United States Department of the Interior ("**Department**"), and respectfully shows the following:

## PRELIMINARY STATEMENT

1.    Ecopetrol seeks review of two final agency actions under the Administrative Procedure Act ("**APA**") and the Federal Oil and Gas Royalty Simplification and Fairness Act ("**Royalty Fairness Act**"). 5 U.S.C. § 704; 30 U.S.C. § 1724(h). The first is a July 17, 2020, Order to Perform Restructured Accounting ("**Order to Perform**") that the Department's Office of Natural Resources Revenue ("**ONRR**") issued Ecopetrol. The second is a June 7, 2023, Decision issued by the Director of ONRR ("**Director Decision**"). Both actions arise from a special provision in the Royalty Fairness Act that gives the Department 33 months (as may be extended by the parties' written agreement) to issue a final decision. If a final decision is not reached within that time, the Department loses jurisdiction. 30 U.S.C. §§ 1724(h)(2)(A), (B).

2.    A common set of facts underlie Ecopetrol's challenges to both the Order to Perform and the Director Decision. Ecopetrol holds several offshore federal oil and gas leases for tracts on

the Outer Continental Shelf ("**OCS**") off the Louisiana coast. While operating these leases, Ecopetrol overpaid royalties to the Department because it did not take transportation allowances for the costs of certain transportation equipment it owned, generally only taking costs it had paid to third parties. Ecopetrol engaged consultants ("**Ecopetrol's Agent**") to document these royalty overpayments and seek refunds from the Department.

3.      On November 25, 2014, Ecopetrol filed a refund request ("**2014 Refund Request**"). ONRR granted the request.[1] Three years later, ONRR initiated an audit of Ecopetrol's 2014 Refund Request.[2]

4.      Ecopetrol's Agent submitted a second refund request on January 4, 2018 ("**2018 Refund Request**"). ONRR denied it, and Ecopetrol appealed the denial to the Director of ONRR (the "**Director**").[3] Ecopetrol's Agent met with ONRR to discuss the denial and the method used to calculate the royalty overpayments underlying both refund requests. Based on these discussions, Ecopetrol's Agent revised its calculation method and submitted another refund request on April 13, 2020 ("**2020 Refund Request**," together with the 2014 Refund Request and 2018 Refund Request, collectively referred to as "**Refund Requests**").

5.      Between the 2018 Refund Request and the 2020 Refund Request, Ecopetrol also submitted four requests to exceed the regulatory allowance limitation ("**Requests to Exceed**").[4]

6.      On April 16, 2020, ONRR issued Ecopetrol an Order to Report and Pay ("**Order to Pay**") detailing ONRR's audit findings regarding the 2014 Refund Request and the portion of the 2020 Refund Request that supplemented the 2014 Refund Request.

---

[1] ONRR granted the 2014 Refund Request on December 16, 2014.
[2] ONRR initiated the audit on December 6, 2017.
[3] ONRR denied the 2018 Refund Request on January 18, 2018.
[4] Ecopetrol submitted the Requests to Exceed on January 18, 2019.

7.      And on July 17, 2020, ONRR issued Ecopetrol the Order to Perform detailing ONRR's audit findings regarding the 2018 Refund Request and the portion of the 2020 Refund Request that supplemented the 2018 Refund Request. Ecopetrol appealed the Order to Perform to the Department's Interior Board of Land Appeals ("**IBLA**").

8.      Based on the Order to Perform, ONRR denied Ecopetrol's 2020 Refund Request on July 22, 2020. ONRR then denied Ecopetrol's Requests to Exceed on September 18, 2020, based on the Order to Perform, Order to Pay, or both (ONRR's denials of the Refund Requests and Requests to Exceed, together, the "**Denials**"). Ecopetrol appealed the Order to Pay and the Denials to the ONRR Director.

9.      The Director consolidated the separate appeals of the Order to Pay and the Denials and issued the Director Decision affirming all the underlying decisions on June 7, 2023. Ecopetrol appealed the Director Decision to the IBLA.

10.     The 33-month period for the Department to render a decision in the Order to Perform appeal under 30 U.S.C. § 1724(h) lapsed on February 14, 2024. By operation of law, the Order to Perform has become final for the Department and is subject to this Court's review. 30 U.S.C. § 1724(h)(2)(B) ("[T]he appellant shall have a right to judicial review of such deemed final decision in accordance with Title 5."). The Order to Perform is the first agency action Ecopetrol challenges.

11.     The IBLA lost jurisdiction over the appeals consolidated in the Director's Decision at various times under 30 U.S.C. § 1724(h). The IBLA lost jurisdiction over the Order to Pay on June 16, 2023. The IBLA lost jurisdiction over the Requests to Exceed on December 31, 2021. The IBLA lost jurisdiction over the 2018 Refund Request on August 13, 2023, and the 2020 Refund Request on May 13, 2023.

12.     Because the IBLA lost jurisdiction over all its underlying, consolidated appeals, by operation of law, the Director Decision has become final and is subject to this Court's review. The Director Decision is the second agency action Ecopetrol challenges.

13.     Though Ecopetrol timely filed a complaint appealing the Director Decision in the related case, *Ecopetrol America, LLC v. U.S. Dep't of the Interior*, No. 6:23-cv-01231-DCJ-DJA (W.D. La. Sept. 8, 2023) (ECF No. 1), on September 8, 2023, a jurisdictional dispute remains pending in that case. Therefore, to reserve its rights, Ecopetrol includes the Director Decision in the above captioned case as well.

## JURISDICTION AND VENUE

14.     Ecopetrol brings this action against the Department under the APA (5 U.S.C. §§ 701–706), the Federal Oil and Gas Royalty Management Act of 1982 (30 U.S.C. §§ 1701–1759), as amended by the Royalty Fairness Act of 1996 (Pub. L. No. 104-185, 110 Stat. 1700), the Outer Continental Shelf Lands Act of 1953 (43 U.S.C. §§ 1331, *et seq.*) ("**OCSLA**"), the Declaratory Judgment Act (28 U.S.C. §§ 2201–2202), the federal royalty regulations of ONRR (30 C.F.R. Chapter XII, Parts 1200–1299 (2010–2015)), and the Due Process Clause of the Fifth Amendment to the United States Constitution.

15.     The Order to Perform and the Director Decision are final agency actions because they are not subject to further appeal within the agency. *See Cont'l Res., Inc. v. Jewell*, 846 F.3d 1232, 1233–34 (D.C. Cir. 2017).

16.     Ecopetrol has suffered legal wrong from, and is adversely affected by, the Order to Perform and Director Decision within the meaning of 5 U.S.C. § 702.

17.     This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 43 U.S.C. § 1349(b)(1) (actions arising out of production of minerals on the OCS). An actual

4858-2799-9181.1

controversy exists between the parties within the meaning of the Declaratory Judgment Act. By operation of the APA, Congress has waived the sovereign's immunity from suit.

18.    Venue is proper because the Department may be found in this district. 43 U.S.C. § 1349(b). *See Superior Oil Co. v. Andrus*, 656 F.2d 33, 41 (3d Cir. 1981) (noting that agencies administering OCSLA can be sued in Delaware because the government "may be found" there "by reason of their ultimate responsibility for the services rendered there").

## PARTIES AND PROPERTIES

19.    Ecopetrol is a Delaware limited liability company with its principal place of business in Houston, Texas.

20.    Ecopetrol holds the following federal leases in the OCS Region in the Gulf of Mexico: 0540110750, 0540104370, 0540104400, and  0540234880.

21.    The Department is a federal executive department of the United States government.

## INTRODUCTION

22.    Ecopetrol owns federal oil and gas leases on the Gulf of Mexico OCS. Four are relevant to this case: 0540110750, 0540104370, 0540104400, and 0540234880 (the "**Leases**").

23.    For many years, Ecopetrol did not claim transportation allowances for the transportation pipelines that it owned, only those paid at arm's length to third parties.

24.    In 2014, Ecopetrol retained Ecopetrol's Agent, a royalty consultant, to act as its agent in preparing refund requests for overpaid royalties. Ecopetrol's Agent calculated the transportation allowances Ecopetrol should have taken for its transportation pipelines and equipment and submitted the Refund Requests on Ecopetrol's behalf.

25.    ONRR granted the 2014 Refund Request but, three years later, initiated an audit into Ecopetrol's calculation methods. The audit resulted in ONRR issuing the Order to Pay and

Order to Perform. ONRR denied the 2018 Refund Request, 2020 Refund Request, and accompanying Requests to Exceed based on the Order to Pay and Order to Perform.

26.    Ecopetrol appealed each decision timely and appropriately, as required by the Department's regulations. Now that the 33-month deadlines have passed, Ecopetrol seeks judicial review of the Order to Perform and the Director Decision under 30 U.S.C. § 1724(h)(2)(B).

## THE FINAL AGENCY ACTIONS UNDER REVIEW

### *The Order to Perform*

27.    The Order to Perform raised four issues Ecopetrol challenges here: (1) the Department classified Ecopetrol's "transportation" costs as ███████████, (2) the Department rejected Ecopetrol's ███████████████, (3) the Department disallowed █████████ ████████████████████████████████████████ and (4) the Department failed to comply with the requirements under the Royalty Fairness Act, reflected in Counts VII-X below.

28.    The Order to Perform acknowledged Ecopetrol was entitled to deduct reasonable, actual costs of transportation incurred on equipment Ecopetrol owned. But it held that Ecopetrol's Refund Requests were based on ███████████████████████████████ The regulations define "transportation allowance" to mean the movement of production "to a point of sale or delivery off the lease," excluding movement of production considered "gathering." 30 C.F.R. § 1206.101 (2016) (oil); *id.* § 1206.151 (2016) (gas).

29.    The Order to Perform acknowledged that the regulations state gathering ends at the "central accumulation point and/or central treatment point." However, the regulations do not specifically define "central accumulation and/or treatment point."

30.    Despite the lack of definition in the regulations, the Order to Perform asserted that "the preambles to the 1988 rulemakings further clarify the meaning of 'central accumulation and/or

4858-2799-9181.1

treatment point.'" Specifically, ONRR maintained that the preambles demonstrate that █████

████████████████████████████████████████████████

████████████████████████████████

31.    Based on the language from the preambles, the Order to Perform determined that

████████████████████████████████████████████████

██████████████████████████

32.    The Order to Perform applied its interpretation by making only one finding of fact

for Ecopetrol's Leases: ████████████████████████████

████████████████████████████████████████████████

███████████████████████

33.    The Order to Perform then addressed two issues concerning how Ecopetrol

accounted for its transportation costs. ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

34.    The second issue concerned ████████████████████████████

████████████████████████████████████████████████

███████████████████    Under 30 C.F.R. § 1206.156(b) (2016), "[t]ransportation costs must be

allocated among all products produced and transported as provided in § 1206.157." Section

1206.157 governs how to allocate transportation costs when more than one "product" is

transported through a pipeline. "Where more than one product in a gaseous phase is transported,

the allocation of costs to each of the products transported shall be made in a consistent and equitable manner in the same proportion as the ratio of the volume of each product (excluding waste products which have no value) to the volume of all products in the gaseous phase (excluding waste products which have no value)." *Id.* § 1206.157(b)(3)(i) (2016). 

35.     The rule draws a further distinction: "Except as provided in this paragraph, the lessee may not take an allowance for transporting a product which is not royalty bearing without ONRR approval." *Id.* 

36.     Ecopetrol showed that ███████████████████████████ ███████████████████████████████████████████ ████████████Despite this showing, the Order to Perform ███████████████ ███████████████████████████████████████████ █████████████

*The Director Decision*

37.     On June 7, 2023, the Director issued the Director Decision. It affirmed the Order to Pay and Denials.

38.     The Director Decision raises six issues Ecopetrol challenges here: (1) the Department found Ecopetrol ██████████████████; (2) the Department disallowed ████████████████████; (3) the Department ███████ ██████████████████; (4) the Department failed to provide fair notice of its new regulatory interpretation; (5) the Department failed to meet statutory requirements, support its decision with a proper administrative record, and specify its reasoning; and (6) the Department untimely required Ecopetrol to refund money, reflected in Counts I-VI below.

39.     The Director Decision relied on the reasoning contained in both the Order to Pay and Order to Perform.

## COUNT I

### THE DEPARTMENT VIOLATED THE APA BY FINDING THAT ECOPETROL ██████████████████████████████████████

40.     Ecopetrol repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

41.     The Department sets forth no rational basis for requiring Ecopetrol ██████████ ██████████████████████████████████

42.     Adjustments to value where oil quality differs from the quality ██████████ ██████████████████████████ provided for in 30 C.F.R. § 1206.119.  The rule provides that "[i]f the value of oil determined under this subpart is based upon a quantity or quality different from the quantity or quality at the point of royalty settlement approved by . . . BSEE for offshore leases, adjust the value for those differences in quantity or quality," *id.* § 1206.119(b) (2016). And under § 1206.102(d)(1)(i) (2016), a lessee "must adjust [its] gross proceeds for any location or quality differential, or other adjustments, . . . received or paid under [an] arm's-length exchange agreement."

43.     The Order to Pay provides only a conclusory assertion, unaccompanied by reasoning or authority, that ████████████████████████████████ ██████████████████████████

## COUNT II

### THE DEPARTMENT VIOLATED THE APA BY INCORRECTLY DISALLOWING ██████████████████████████████████████

44.     Ecopetrol repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

45.     Ecopetrol ███████████████████████████████████████████

███████████

46.     Despite the Department ████████████████████████████████

████████████████████████████████████████████████████████████████

████████

47.     Under 30 C.F.R. § 1206.157(a), a lessee incurring transportation costs under an arm's-length contract may claim a transportation allowance consisting of "the reasonable, actual costs incurred by the lessee for transporting the unprocessed gas, residue gas and/or gas plant products" under the applicable transportation contract. Under § 1206.157(f)(1), allowable costs for purposes of determining transportation allowances "include, but are not limited to" items such as "firm demand charges or capacity reservation fees paid to a pipeline, including charges or fees for unused firm capacity" that a lessee may hold. Section 1206.157(f) also lists numerous additional pipeline-related costs, including costs for ancillary services, payments for actual or theoretical losses, and costs of ensuring shipper creditworthiness, that may constitute allowable transportation costs.

48.     The rule, therefore, makes clear that, ██████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████

49.     The Order to Pay must be set aside for failing to follow applicable regulations concerning allowable transportation costs.

## COUNT III

## THE DEPARTMENT VIOLATED THE APA BY ████████████████████████████.
██████████████████████████████

50.     Ecopetrol repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

51.     The Department arbitrarily determined that Ecopetrol may not deduct ████████

████████████████████████████████████████████████████████

████████████████████████████████████

52.     ████████████████████████████████████████████

████████████

53.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

54.     The Order to Pay must be set aside because it failed to correctly apply the regulations to the facts.

**COUNT IV**

**THE DEPARTMENT VIOLATED CONSTITUTIONAL DUE PROCESS AND THE APA BY FAILING TO PROVIDE FAIR NOTICE OF ITS NEW REGULATORY INTERPRETATION**

55.     Ecopetrol repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

56.     The Director Decision and Order to Perform violated Ecopetrol's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution and the APA

11

because ONRR failed to provide fair notice of its counter-textual interpretation of the transportation regulations.

57.    The Director Decision and Order to Perform further violate Ecopetrol's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution and the APA because the ███████████████████████████████████████████████

███████████████████████████████████████████████

## COUNT V

## THE DEPARTMENT VIOLATED THE APA BECAUSE IT FAILED TO MEET STATUTORY REQUIREMENTS, SUPPORT ITS DECISION WITH A PROPER ADMINISTRATIVE RECORD, AND SPECIFY ITS REASONING

58.    Ecopetrol repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

59.    The Director Decision did not meet statutory requirements for obligation identification, specificity, or reasoning, as required under 30 U.S.C. §§ 1702(23), 1702(26), and 1724(b)(1) and IBLA precedent.

60.    The Department has failed to support its determinations with "a proper administrative record, including a reasoned analysis of the facts leading to the decision, which provides a rational connection between the facts found and the choices made, in short a rational basis for its decision." *See Jung Park*, No. IBLA 2012-65, 2012 WL 1184347, at *5 (Mar. 13, 2012).

61.    The Department has also failed to sufficiently specify its reasons and factual bases by articulating the positions of the parties, as outlined in *XTO Energy, Inc*., 191 IBLA 110 (2017). The Director Decision failed to sufficiently explain why it requested a refund from Ecopetrol in the Order to Pay without providing Ecopetrol with any quantification for how this amount was determined or how the auditor expects it to be reported.

62.     By failing to observe the procedure required by law, the Director Decision improperly raised issues without sufficient reasoning. Thus, it must be held unlawful and set aside. 5 U.S.C. § 706(2)(D).

## COUNT VI

### THE DEPARTMENT VIOLATED THE APA AND ROYALTY FAIRNESS ACT BY UNTIMELY REQUIRING ECOPETROL TO REFUND MONEY

63.     Ecopetrol repeats and re-alleges the allegations of the preceding paragraphs as if fully set for therein.

64.     The Director Decision unlawfully required Ecopetrol to refund money after its 2014 Refund Request was already resolved.

65.     Under 30 U.S.C. §§ 1702(26)(A)(ii) and 1721a(b)(3), only ONRR holds obligations to refund, not lessees. Royalty refund obligations, by definition, are solely ONRR's. Order, *Devon Energy Prod. Co., L.P.*, IBLA 2018-89, at 2 (June 4, 2018).

66.     Under 30 U.S.C. § 1721a, ONRR has 120 days to approve or deny refund requests. Ecopetrol submitted the 2014 Refund Request on November 25, 2014. ONRR approved the 2014 Refund Request by January 27, 2015, within the required 120-day period. More than five years later, on April 16, 2020, ONRR issued the Order to Pay outside the statutory limit. The 120-day period under § 1721a had already expired more than five years ago—on March 25, 2015.

67.     The Department is also bound by 30 U.S.C. § 1724(h), which gave the Department 33 months before it lost jurisdiction over Ecopetrol's 2014 Refund Request. Ecopetrol's 2014 Refund Request was submitted on November 25, 2014, and 33 months later was August 25, 2017.

68.     In fact, at the time the 33 months ended, Ecopetrol owed nothing to the government in connection with the 2014 Refund Request. Indeed, the Department had issued a refund to Ecopetrol pursuant to the 2014 Refund Request. Under § 1724(h)(2)(A), if the amount in dispute

13

"is less than $10,000, the Secretary shall be deemed to have issued and granted a decision in favor of the appellant." When the 33-month period lapsed, there was no dispute: Ecopetrol owed less than $10,000; indeed, it owed nothing at all. Thus, under § 1724(h)(2)(A), the Secretary was deemed to have issued a final decision *in Ecopetrol's favor* 33 months after Ecopetrol submitted the 2014 Refund Request.

69.     ONRR's attempt to now claw back the amount approved in the 2014 Refund Request via the Order to Pay is therefore contrary to law and procedure, and untimely. As a result, the Department is time-barred from pursuing additional royalties related to the 2014 Refund Request.

### COUNT VII

### THE DEPARTMENT VIOLATED THE APA BY CLASSIFYING ECOPETROL'S TRANSPORTATION COSTS AS ██████████████.

70.     Ecopetrol repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

71.     The Order to Perform disallowed a ████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████ The Order to Perform concluded that ██████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████████████████ It does so even though ONRR identified ████████████████████ ███████████████████████████████████████████████████ ████████████████████████████

72.    Moreover, ████████████████████████████████████████████
██████████████████    Since 1954, a lessee could, subject to the agency's approval, move production "to a central point for purposes of treating, measuring, and storing." *Nexen Petroleum U.S.A. Inc.*, 157 IBLA 286, 296 (2002) (quoting 30 C.F.R. § 250.68 (1979)), *aff'd* 2004 WL 722435 (E.D. La. 2004). Here, production from ████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████████.

73.    ████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████.

74.    For these reasons, the Order to Perform violates the APA and must be set aside.

## COUNT VIII

## THE DEPARTMENT VIOLATED THE APA BY REJECTING ECOPETROL'S ████████.
████████████████████████.

75.    Ecopetrol repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

76.    The Order to Perform erred in claiming ██████████████████████
███████████████████████████████████████████████████████████████
██████████████    because ONRR had not provided notice, as required under 5 U.S.C. § 552. Specifically, the Order to Perform claimed that ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████

77.     Furthermore, ONRR did not respond to Ecopetrol's showing ████████████

████████████████████████████████████████████████████████

████████████

78.     The Order to Perform's primary legal premise was also irrational. The Order to

Perform claimed that the ████████████████████████████████████████

████████████████████████████████████ This is false. The regulations

on ████████████████████ are silent ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

79.     ████████████████████████████████████████████████. It

follows, therefore, that the regulations meant to allow lessees significant leeway in choosing the

method. By directing that ONRR generally ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████. The Order to

Perform did not claim the regulation is ambiguous. The "plain meaning of a regulation governs

and deference to an agency's interpretation of its regulation is warranted only when the

4858-2799-9181.1

regulation's language is ambiguous." *El Comite Para El Bienestar de Earlinart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008) (internal citation omitted).

80. There is an additional flaw in the Order to Perform's reasoning [redacted] The applicable regulations do not specify [redacted], and the Order to Perform points to no authority on this point beyond the Director's own informal guidance. Before the Order to Perform was issued, ONRR had given Ecopetrol no reason to doubt that [redacted]

81. From its initial submission of [redacted] for the Leases through the preparation of the Refund Requests, Ecopetrol consistently provided relevant data to ONRR and has engaged in discussions with ONRR to develop its recalculation methodology.

82. Moreover, Ecopetrol informed ONRR on numerous occasions, including during meetings after submission of the 2018 Refund Request and during the audit process, that [redacted]

83. ONRR had nearly two and a half years to request any other relevant information that it required, but it failed to do so despite having issued 11 data requests.

84. In *Ovintiv USA, Inc. v. Haaland*, the District Court for the District of Columbia held that the Director's reasoning was arbitrary because he failed to draw the line dividing a "capacity reservation fee" from a "penalty." 665 F. Supp. 3d 59, 80 (D.D.C. 2023). Like in *Ovintiv*, the Director here failed to draw the lines needed to [redacted]. This is arbitrary reasoning. This flaw is in addition to Ecopetrol's unanswered argument that ONRR cannot penalize Ecopetrol for failure to follow a procedure about which the Department gave no notice in the Federal Register. *Id.* at 78 n.10. The Order to Perform must be set aside.

## COUNT IX

### <u>THE DEPARTMENT VIOLATED THE APA BY DISALLOWING ECOPETROL'S</u> ████████████████████████████████████████████████████████████.
████████████████████████████

85.     Ecopetrol repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

86.     The Order to Perform erred in disallowing Ecopetrol from ██████████ ████████████████████████████████████████████████████████████████████ The general rule at issue is 30 C.F.R. § 1206.156(b). Under that rule, "[t]ransportation costs must be allocated among all products produced and transported as provided in § 1206.157." In relevant part, section 1206.157 governs ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████████████ § 1206.157(b)(3)(i). Then the rule draws a further distinction. "Except as provided in this paragraph, the lessee may not take an allowance for transporting a product which is not royalty bearing without ONRR approval." *Id.* The regulations thus make a distinction between a product which is "waste" and a product which is ████████ ████████████████████████████████████████ ████████████████████████

87.     ████████████████████████████████████████ ████████████
████████████████████████████
████████████████████████████
████████████████████████████



████████████. From the emphasized phrases, one sees the following key points. First, the Department rejected a rule that it would ████████ ████████████. Second, it would allow deduction of costs for ████████████████████. Third, one example of a deductible cost was transportation ████████████████. Fourth, though ONRR now contends otherwise, the idea of "waste products" was not defined by the marketable condition rule.

88.    ████████████████, just as the preamble indicated. Ecopetrol showed ████████████████

████████████████████████

████████████████████████

████████████████████████

████████

89.    The Order to Perform thus arbitrarily ████████████████

████████████████

**COUNT X**

**THE DEPARTMENT VIOLATED THE APA BY FAILING TO COMPLY WITH ROYALTY FAIRNESS ACT REQUIREMENTS**

90.    Ecopetrol repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

91.    Finally, the Order to Perform must be set aside, because, in at least three different ways, the Director of ONRR did not sufficiently follow procedural requirements under 30 U.S.C. § 1724(d)(4)(B) or otherwise meet the standard set by IBLA precedent.

92.    First, ONRR has failed to support its determinations in the Order to Perform with "a proper administrative record, including a reasoned analysis of the facts leading to the decision, which provides a rational connection between the facts found and the choices made, in short a rational basis for its decision." *See Jung Park*, No. IBLA 2012-65, at *5. The administrative record produced by ONRR in this matter is facially incomplete because (i) it is missing documents and (ii) it contains no explanation for inconsistencies set forth in materials ONRR has relied upon.

93.    Second, ONRR has also failed to sufficiently specify its reasons and factual bases by articulating the positions of the parties, as outlined in *XTO Energy, Inc.*, 191 IBLA 110 (2017). In *XTO Energy*, the IBLA determined an order to perform restructured accounting had been properly issued after finding the order included certain "recitations" which "met the requirement that ONRR 'specify the reasons and factual bases.'" Among those recitations, the IBLA noted, "for each identified issue, ONRR explained what information it reviewed, the applicable law or guidance, [the lessee's] position, and ONRR's position" as well as instances in which the lessee "had conceded error." 191 IBLA at 121.

94.    In this case, the Order to Perform does not meet the standard the IBLA articulated in *XTO*. Here, the Order to Perform fails to recite either Ecopetrol's position or ONRR's position. This is not surprising because ONRR did not previously notify Ecopetrol of any issues identified in the Order to Perform or seek Ecopetrol's position. Because ONRR raised every determination in this case for the first time in the Order to Perform, the Director failed to provide reasoning or

basis for why she chose ONRR's position over Ecopetrol's or why she determined ONRR's interpretation of the regulations was any more reasonable than Ecopetrol's interpretation.

95.     Third, Ecopetrol's ███████████████████████████████████ ████████████████████████████████████████████████████████ ██████████. *See XTO Energy Inc.*, ONRR-14-0060-O&G, 2018 WL 6685050 (2018) (determining an order to perform restructured accounting was properly issued where the lessee failed to fully account for all portions of royalty-bearing production volumes in its royalty reports "[b]ecause a royalty due the United States is directly related to a lease production volume" and thus "it is both proper and logical to conclude that [a lessee's] underreporting of its royalty-bearing production resulted in a proportionate underpayment of royalties due the United States").

96.     In this case, ████████████████████████████████ did not result in any underpayment, and Ecopetrol's proposed revision to ████████████████ will not result in any change of payment. Contrary to the statutory requirements of an order to perform restructured accounting, it is noteworthy here that the Director has not (i) determined Ecopetrol should recalculate any royalty due based on the Order to Perform's request for Ecopetrol to ██████ ████████████████ for █████████████████ on previously submitted Form ONRR-CMP-2014's for the period of April 2014 through September 2016, (ii) identified any underpayment or overpayment based upon such ████████████████████, or otherwise (iii) demonstrated the ████████████████████ is likely to result in significant underpayments or overpayments.

97.     By failing to observe the procedure required by law, the Director Decision improperly raised issues without sufficient reasoning. Thus, it must be held unlawful and set aside. 5 U.S.C. § 706(2)(D).

**PRAYER FOR RELIEF**

WHEREFORE, Ecopetrol prays the Court:

1) Vacates the Order to Perform and Director Decision;

2) Hold the Order to Perform and Director Decision were unlawful as arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law; contrary to constitutional right, power, or privilege; excessive of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; and unsupported by substantial evidence;

3) Enter declaratory judgment that the Order to Perform and Director Decision were unlawful, that the Department unlawfully disregarded regulations and agency precedent as to the oil and gas production at issue, and that such production must be permitted transportation allowances for costs incurred;

4) Enter declaratory judgment that Ecopetrol may retain allowances previously calculated;

5) Enter declaratory judgment, and to the extent warranted, compel agency action unlawfully withheld and unreasonably delayed;

6) Award Ecopetrol costs and attorneys' fees to the extent permitted by law; and

7) Grant such other relief as may be appropriate in the circumstances.


Dated: July 14, 2024

Respectfully submitted,

By: */s/ Ashlee Cassman Grant*
    Ashlee Cassman Grant
    LA Bar No. 33052
    811 Main Street, Suite 1100 Houston,
    Texas 77002
    Phone: (713) 646-1364
    Fax: (713 )751-1717

agrant@bakerlaw.com

**ATTORNEY FOR PLAINTIFF ECOPETROL AMERICA, LLC**

4858-2799-9181.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2024, I served the foregoing document through the Court's CM/ECF system which will send notification of such filing to all counsel of record. I further provided service to the Department via certified U.S. Mail, return receipt requested.

<div align="right">

*/s/ Ashlee Cassman Grant*
Ashlee Cassman Grant

</div>

4858-2799-9181.1